## BACHMAN v. UNITED STATES et al.
### No. 14962.

District Court, W. D. Washington, N. D.
May 9, 1947.

Levinson & Friedman, of Seattle, Wash. (Sam L. Levinson, of Seattle, Wash., of counsel), for libellant.

J. Charles Dennis, U. S. Atty., and Bogle, Bogle & Gates, all of Seattle, Wash. (Edw. S. Franklin, of Seattle, Wash., of counsel), for respondent United States.

Bogle, Bogle & Gates, of Seattle, Wash. (Edw. S. Franklin, of Seattle, Wash., of counsel), for respondent Alaska Transportation Co.

BOWEN, District Judge.

On November 23, 1945, about 3:00 o'clock, p. m., while the S. S. Union Victory, on which libelant was employed as Junior Licensed Engineer, was at anchor in the harbor of Saipan, libelant slipped on oil-slick metal floor plates in the generator flat in the engine department of the vessel and fell and struck his right knee, injuring the patella. The accident and resulting injury caused libelant to suffer considerable loss of time and finally to lose, through surgery, his right patella. This action was brought to recover damages for libelant's personal injuries and loss of time.

The court thinks that the evidence overwhelmingly establishes and the court finds, concludes and decides that the libelant was injured in the manner related by him on board ship while he was performing his ordinary duties. That is evidenced, in my opinion, by what he affirmatively states from the witness stand and also by the circumstance that he reported the accident to the purser-pharmacist; and that that employee of the ship, in the course of his duties, made a report of the accident about the third day after it happened. I assume that that was about the time when the Chief Engineer first learned of the fact. He stated that the occurrence of the accident should have been entered in the Engine-Room Log Book, I believe, by someone.

There is one bit of evidence in the case which I think respondent is entitled to stress; namely, that given by the witness Ames that, although he was a friend of Bachman, the libelant, and frequently talked and visited with him, the libelant never did during the time of their association mention the fact that he had had this accident.

In that connection, I am reminded from the evidence that the accident was regarded by libelant merely as a knee sprain at first. It was not regarded as a serious accident by the libelant himself at the outset. Also, the occurrence took place at Saipan in the war zone, or in the zone that had been active in the war activities, and I suspect it was at a time when these men figured that they were in the war about as much as men bearing arms were, and they weren't making a point of every little scratch and sprain that they might experience.

Some people might think that Congress should have made some arrangements to put these seamen, while in the war zone, on the same basis as the military people were—that is, without a remedy for per-

sonal injuries—but Congress didn't do that. While I believe it is possible that some of the seamen may have been influenced in their attitude towards personal injuries received in the course of duty and as to a possible tendency to minimize them, they nevertheless had saved to them, by the law, during the wartime, the same rights for compensation for negligent personal injury which they had always had.

The only evidence in the case touching the matter of whether the ship was negligent or was unseaworthy seems to me to come from the libelant himself; at least, that is the only evidence of a convincing nature. The witness Ames spoke of the usual situation respecting due care and seaworthy condition at the place of the accident, rather than as to a personal knowledge of the exact condition of the place at the time of the alleged occurrence of the accident.

So that the Court finds, from a preponderance of the evidence, that the iron plates at the time and place of the accident were in an unseaworthy and negligent condition by reason of the failure of the ship and shipowner to keep the oil slick wiped up with a proper and suitable instrument such as a dry mop, and that as a result of such unseaworthy and negligent condition, the libelant sustained the injuries and damages for which he seeks compensation in this action.

The Court further finds, concludes and decides, from a preponderance of the evidence, that the sum of $3500 would be a reasonable and just sum to be allowed to the libelant on account of the personal injuries sustained by him. In that connection, the Court observes that he sustained a fractured kneecap which by later surgery was taken out of his leg. He had surgery and he had disability. I think $3500 will reasonably and justly compensate him for the one-third disability of his right leg on account of the loss of his patella and for suffering and surgery.

In addition to that, the Court finds, decides and concludes, from a preponderance of the evidence, that the libelant, but for the accident and injury, would have been gainfully employed at his current salary of $225 a month for eleven months (later at a subsequent hearing changed to nine months).